Thomas J. Luz (TL-4665)
KLG Luz & Greenberg LLP
211 East 43rd Street, 24th Floor
New York, New York 10017
(212) 681-8313

Ryan L. Woody*
Matthiesen, Wickert & Lehrer, S.C.
1111 E. Sumner Street
Hartford, WI 53027
(262) 673-7850
 *Pro Hac Vice to be filed

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
PARK SLOPE FOOD COOP INC., as Plan
Administrator of the PARK SLOPE FOOD COOP       :     Case No.  19-7168
HEALTH CARE PLAN,
                                                :     **COMPLAINT**
                Plaintiffs,
                                                :
        -against-
                                                :
THOMAS LASKARIS and GAIR, GAIR,
CONASON, RUBINOWITZ, BLOOM,                     :
HERSHENHORN, STEIGMAN & MACKAUF,
                                                :
                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff Park Slope Food Coop Inc., as Plan Administrator of the Park Slope Food Coop Health Care Plan, as and for its Complaint against Defendants, Thomas Laskaris and Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf alleges as follows:

**BACKGROUND**

1. This is an action under sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(3), for equitable relief

both to remedy violations of and to enforce the Park Slope Food Coop Health Care Plan (from time to time referred to as the "Plan"), a *self-funded* employee welfare benefit plan within the meaning of ERISA § 3(a), 29 U.S.C. § 1002(1).

2. The Plan has paid benefits on behalf of Thomas Laskaris for injuries he sustained from a May 26, 2017 automobile accident. The Plan seeks equitable relief in the form of a constructive trust and/or equitable lien by agreement upon amounts held by Mr. Laskaris and Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf that belong in good conscience to the Plan.

3. This is an action, in part, for equitable relief and the imposition of a constructive trust and/or equitable lien over identifiable funds in the possession or constructive possession of the Defendants.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has exclusive subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1).

5. Venue in this Court is proper pursuant to 29 U.S.C. § 1132(e)(2), because the Defendants reside within this district and this is where the breach took place.

## THE PARTIES

6. Plaintiff Park Slope Food Coop Inc. ("Park Slope") is a New York State corporation with its principal place of business at 782 Union Street, Brooklyn, New York. Park Slope is the Plan Administrator of the Park Slope Food Coop Health Care Plan, which is administered at 782 Union Street, Brooklyn, New York.

7. Park Slope is a "fiduciary" as defined in 29 U.S.C. §1002(21)(A), and brings this action under 29 U.S.C. §1132(a)(2) to enforce the provisions of Subchapter I, part 6

of ERISA, 29 U.S.C. §§1161-1169, and the terms of the Plan.

8. Park Slope also brings this action under 29 U.S.C. §1132(a)(3), (i) to enjoin acts or practices that violate the provisions of Subchapter I of ERISA and the terms of the Plan, and (ii) to obtain other appropriate equitable relief to redress such violations.

9. Plaintiff is authorized to bring this action on behalf of all Plan participants and beneficiaries to enforce the terms of the Plan and to protect the assets of the Plan under 29 U.S.C. §§ 1132(a)(2) and (a)(3), and federal common law.

10. Upon information and belief, Thomas Laskaris was, at all relevant times, an adult resident of the State of New York with an address at 483 10th Street, Brooklyn, NY 11215-4301, and a covered participant in the Plan.

11. Upon information and belief, Gair, Gair, Conason, Rubinowitz, Bloom, Hershenhorn, Steigman & Mackauf ("Gair") was, at all relevant times, a law firm and New York partnership with its principal place of business at 80 Pine Street, 34th Floor, New York, New York, 10005. Gair represents Mr. Laskaris in an action for personal injuries related to the accident. Gair is a necessary party because it is the trustee of the Thomas Laskaris settlement funds, is in actual and/or constructive control of the funds, and is named as a Defendant to ensure that full relief may be granted.

**FACTUAL ALLEGATIONS**

12. Plaintiff repeats paragraphs 1 through 11.

13. At all relevant times, Mr. Laskaris was a participant and covered person under the Plan.

14. On or about May 26, 2017, Mr. Laskaris sustained injuries as a result of an automobile accident in Brooklyn, New York.

15. Mr. Laskaris brought an action against the parties responsible for his injuries and other damages resulting from the accident, including medical expenses paid by the Plan.

16. The Plan has paid medical expenses in the amount of $166,614.53 to or on behalf of Mr. Laskaris for his injuries and seeks to recover 100% of this amount from the Defendants to the extent they have recovered money from the party(ies) responsible for Mr. Laskaris's injuries.

17. The Plan contains the following provisions governing subrogation and reimbursement:

### SUBROGATION, THIRD-PARTY RECOVERY AND REIMBURSEMENT

**Payment Condition**

(1) The Plan, in its sole discretion, may elect to conditionally advance payment of benefits in those situations where an Injury, Illness, disease or disability is caused in whole or in part by or results from the acts or omissions of you and/or your Dependents, plan beneficiaries and/or their Dependents, beneficiaries, estate, heirs, guardian, personal representative or assigns (collectively referred to hereinafter in this section as "Covered Person") or a third party, where any party besides the Plan may be responsive for expenses arising from an incident, and/or other insurance or other funds are available, including but not limited to no-fault, uninsured motorist, underinsured motorist, medical payment provisions, third party assets, third party insurance, and/or guarantor(s) of a third party (collectively "Coverage").

(2) The Covered Person, his or her attorney and/or legal guardian of a minor or incapacitated individual agrees that acceptance of the Plan's conditional payment of medical benefits is constructive notice of these provisions in their entirety and agrees to maintain 100% of the Plan's conditional payment of benefits or the full extent of payment from anyone or combination of first and third party sources in trust, without disruption except for reimbursement to the Plan or the Plan's assignee. By accepting benefits the Covered Person agrees the Plan shall have an equitable lien on any funds received by the Covered Person and/or their attorney from any source and said funds shall be held in trust until such time as the obligations under this provision are fully satisfied. The Covered Person agrees to include the Plan's name as a co-payee on any and all settlement drafts. Further, by accepting benefits the Covered Person understands that any recovery obtained pursuant to this section is an asset of the Plan to the extent of the amount of benefits paid by the Plan and that the Covered Person shall be trustee over those Plan assets.

4

(3) In the event a Covered Person settles, recovers or is reimbursed by any Coverage, the Covered Person agrees to reimburse the Plan for all benefits paid or that will be paid by the Plan on behalf of the Covered Person. If the Covered Person fails to reimburse the Plan out of any judgment or settlement received, the Covered Person will be responsible for any and all expenses (fees and costs) associated with the Plan's attempt to recover such money.

(4) If there is more than one party responsible for charges paid by the Plan or may be responsible for charges paid by the Plan, the Plan will not be required to select a particular party from whom reimbursement is due. Furthermore, unallocated settlement funds meant to compensate multiple injured parties of which the Covered Person(s) is/are only one or a few, that unallocated settlement fund is considered designated as an "identifiable" fund from which the Plan may seek reimbursement.

**Subrogation**

(1) As a condition to participating in and receiving benefits under this Plan, the Covered Person agrees to assign to the Plan the right to subrogate and pursue any and all claims, causes of action or rights that may arise against any person, corporation and/or entity and to any Coverage to which the Covered Person is entitled, regardless of how classified or characterized, at the Plan's discretion, if the Covered Person fails to so pursue such rights or action.

(2) If a Covered Person receives or becomes entitled to receive benefits, an automatic equitable lien attaches in favor of the Plan to any claim, which any Covered Person may have against any coverage and/or party causing the Illness or Injury to the extent of such conditional payment by the Plan plus reasonable costs of collection. The Covered Person is obligated to notify the Plan or its authorized representative of any settlement prior to the finalization of the settlement, execution of a release, or receipt of applicable funds. The Covered Person is also obligated to hold any and all funds so received in trust on the Plan's behalf and function as a trustee as it applies to those funds until the Plan's rights described herein are honored and the Plan is reimbursed.

(3) The Plan may, at its discretion, in its own name or in the name of the Covered Person, commence a proceeding or pursue a claim against any party or Coverage for the recovery of all damages to the full extent of the value of any such benefits or conditional payments advanced by the Plan.

(4) The Covered Person authorizes the Plan to pursue, sue, compromise and/or settle any such claims in the Covered Persons and/or the Plan's name and agrees to fully cooperate with the Plan in the prosecution of any such claims if the Covered Person fails to file a claim or pursue damages against.

(a) The responsible party, its insurer or any other source on behalf of that party;

    (b) Any first party insurance through medical payment coverage, personal injury protection, no-fault coverage, uninsured or underinsured motorist coverage;

    (c) Any policy of insurance from any insurance company or guarantor of a third party;

    (d) Workers' Compensation or other liability insurance company; or

    (e) Any other source, including but not limited to crime victim restitution funds, any medical, disability or other benefit payments and school insurance coverage.

The Covered Person assigns all rights to the Plan or its assignee to pursue a claim and the recovery of all expenses from any and all sources listed above.

**Right of Reimbursement**

(1) The Plan shall be entitled to recover 100% of the benefits paid, without deduction for attorneys' fees and costs or application of the common fund doctrine, make whole doctrine or any other similar legal theory, without regard to whether the Covered Person is fully compensated by his or her recovery from all sources. The Plan shall have an equitable lien which supersedes all common law or statutory rules, doctrines and laws of any State prohibiting assignment of rights which interferes with or compromises in any way the Plan's equitable lien and right to reimbursement. The obligation to reimburse the Plan in full exists regardless of how the judgment or settlement is classified and whether or not the judgment or settlement specifically designates the recovery or a portion of it as including medical, disability or other expenses. If the Covered Persons' recovery is less than the benefits paid, then the Plan is entitled to be paid all of the recovery achieved. Any funds received by the Covered Person are deemed held in constructive trust and should not be dissipated or disbursed until such time as the Covered Person's obligation to reimburse the Plan has been satisfied in accordance with these provisions. The Covered Person is also obligated to hold any and all funds so received in trust on the Plan's behalf and function as a trustee as it applies to those funds until the Plan's rights described herein are honored and the Plan is reimbursed.

(2) No court costs, experts' fees, attorneys' fees, filing fees or other costs or expenses of litigation may be deducted from the Plan's recovery without the prior, expressed written consent of the Plan.

(3) The Plan's right of subrogation and reimbursement will not be reduced or affected as a result of any fault or claim on the part of the Covered Person, whether under the doctrines of causation, comparative fault or contributory negligence or other similar doctrine in law. Accordingly, any lien reduction statutes, which attempt to apply such laws and reduce a subrogating Plan's recovery will not be applicable to the Plan and will not reduce the Plan's reimbursement rights.

(4) These rights of subrogation and reimbursement shall apply without regard to whether any separate written acknowledgment of these rights is required by the Plan and signed by the Covered Person.

(5) This provision shall not limit any other remedies of the Plan provided by law. These rights of subrogation and reimbursement shall apply without regard to the location of the event that led to or caused the applicable Illness, Injury, Disease or disability.

(Exhibit 1, Plan Doc, Ex. A. pp. 4-5).

18. On or before November 21, 2017, Mr. Laskaris retained Attorney Howard Hershenhorn of Gair to pursue claims against the parties responsible for his accident and injuries.

19. On November 21, 2017, June 27, 2018, November 6, 2018, November 7, 2018, November 27, 2018, January 28, 2019, February 19, 2019, April 19, 2019, June 17, 2019, July 18, 2019, June 17, 2019, August 1, 2019, and September 10, 2018, the Plan's representative sent letters to Mr. Hershenhorn notifying him of the Plan's ERISA subrogation and reimbursement rights.

20. The Defendants have indicated that they will not be reimbursing the Plan according to the written terms of the Plan.

21. On December 5, 2019, Mr. Hershenhorn sent a fax to the representative of the Plan, denying the Plan's right of subrogation and reimbursement, suggesting that the plan is "entitled to no lien whatsoever" and "graciously offering you 5% which totals $8,389.12, of your claimed lien." The Plan has declined the "gracious" offer.

22. Upon information and belief, the Defendants have now recovered $1,250,000.00 from the parties responsible for Mr. Laskaris's injuries for an amount in excess of the Plan's lien. Though the Defendants have recovered funds, they have refused to honor the Plan's first-priority reimbursement claim.

23. Further, despite numerous communications from the Plan and its

7

representatives, the Defendants have ignored all requests to reimburse the Plan.

24. Pursuant to Rule 1.15(c) of the New York Rules of Professional Conduct, because Gair was aware of Plaintiff's ERISA lien in this matter, upon its receipt of the settlement funds in which the Plan claimed an interest from the third party tortfeasor, Gair was required to promptly notify the Plan, promptly deliver the funds to the Plan, and render a full accounting to the Plan.

25. Pursuant to Rule 1.15(c) of the New York of Professional Conduct, when Gair came into possession of property in which the Plan claimed an interest, the property was to be kept separate by Gair until there was an accounting and severance of the respective interests. Since Gair was aware that a dispute had arisen concerning the respective interests, the portion in dispute was to be kept separate until the dispute was resolved.

## COUNT I
## CLAIMS FOR RELIEF UNDER 29 U.S.C. § 1132(a)(3)
(AGAINST ALL DEFENDANTS)

26. The terms of the Plan are binding upon Mr. Laskaris as a plan participant and covered person, and on any attorneys retained by him. (Plan p. 61, Payment Conditions ¶ 2.)

27. According to the Plan, where other coverage is available to participants, the Plan only pays benefits conditionally upon the participant's agreement that he and his attorneys will reimburse the Plan for payments it has made in the event of a recovery from a third party.

28. The Plan has a right to reimbursement of medical expenses it paid on behalf of Mr. Laskaris from any and all settlement(s) received from parties responsible for his injuries up to $166,614.53.

29. Upon information and belief, the Defendants are in possession and/or constructive possession of funds to which they are not entitled, and that belong in good conscience to the Plan.

30. Under ERISA § 502(a)(3), there are no limitations upon a party who holds disputed funds on behalf of a plan participant. *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 244–46, 120 S. Ct. 2180, 2187, 147 L.Ed.2d 187 (2000); *Kohl's Dep't Stores v. Castelli,* 961 F. Supp. 2d 415, 426 (E.D.N.Y. 2013).

31. Although the Plaintiff has requested that the Defendants reimburse the Plan, the Defendants have refused to turn over the portion of the recovered funds as required by the terms of the Plan. Defendants' refusal violates the terms of the Plan and ERISA. Plaintiff is entitled to equitable restitution in the form of a constructive trust or equitable lien by agreement with respect to the disputed funds controlled by the Defendants.

32. As a result of Defendants' violation of the terms of the Plan, Plaintiff has been injured. The Plan and Plan Administrator, in its capacity as fiduciary of the Plan, therefore seek all appropriate equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including but not limited to a constructive trust and equitable lien upon specifically identifiable and traceable funds in order to enforce the terms of the Plan.

## COUNT II
## DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### (AGAINST ALL DEFENDANTS)

33. The terms of the Plan are binding upon Mr. Laskaris, as a plan participant and covered person, and on any attorneys retained by him. (Plan p. 61, Payment Conditions ¶ 2.)

34. The Defendants promised not to do anything to prejudice the Plan's

rights of subrogation or reimbursement. (Plan. p. 63, Obligations ¶ (1)(d).)

35. The Defendants breached this obligation by denying the Plan's right of subrogation and reimbursement and threatening a potential lawsuit.

36. The Plan has an enforceable right to reimbursement for medical expenses it paid on behalf of Mr. Laskaris out of any and all settlement fund(s) the Defendants have received or will receive for Mr. Laskaris's injuries. (Plan p. 62, Right of Reimbursement.)

37. The Defendants promised to promptly reimburse the Plan when a recovery through a settlement is made. (Plan p. 63, Obligations ¶ 1(e).)

38. Pursuant to the terms of the Plan, if Defendants fail to reimburse the Plan for all benefits paid out of any settlement received, the Covered Person will be responsible for any and all expenses (whether fees or costs) associated with the Plan's attempt to recover from the Defendants. (Plan p. 63, Obligations ¶ (2).)

39. The Plan has attempted to enforce its right to reimbursement by asserting a lien on any recovery received by the Defendants.

40. The Defendants' continued refusal to honor the terms of the Plan, and continued actions that prejudice the Plan's right of reimbursement, are violations of the Plan's terms and a breach of the Defendants' obligations to the Plan.

41. The Plaintiff seeks a declaratory judgment from the Court declaring that (i) the subrogation and reimbursement provisions of the Plan apply to the funds recovered by Mr. Laskaris; (ii) New York General Obligations Law § 5-335 does not apply to this action; and (iii) under the "make-whole" and "common fund" doctrines of ERISA, the Plan is entitled to first priority reimbursement of 80% of the benefits it paid on behalf of Mr. Laskaris from the proceeds of any and all settlement(s) with the responsible third party(ies) that the Defendants

have received for Mr. Laskaris's injuries. *See Cognetta v. Bonavita,* 330 F. Supp. 3d 797, 805 (E.D.N.Y. 2018) (GOL 5-335 preempted because the Plan is self-funded.)

## COUNT III
## ATTORNEYS' FEES AND COSTS

44. Plaintiff seeks its actual attorneys' fees and costs, pursuant to 29 U.S.C. §1132(g).

45. Plaintiff is also entitled to its actual attorneys' fees and costs pursuant to the terms of the Subrogation provision within the Plan.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Park Slope Food Coop as Plan Administrator of the Park Slope Food Coop Health Care Plan, requests the following:

A. The imposition of an *in rem* constructive trust and/or equitable lien by agreement in favor of the Plan in the amount of $166,614.53 from the proceeds of any and all settlement(s), plus accrued interest, in the possession of the Defendants and/or their attorneys, agents or representatives;

B. A declaration of the Plan's ownership of the above-referenced settlement funds in the amount of $166,614.53 representing 100% of the amount of payments made by the Plan on behalf of Thomas Laskaris;

C. A declaration that General Obligations Law 5-335 is preempted by ERISA;

D. An order enjoining the Defendants from transferring or disposing of any settlement funds which would prejudice, frustrate, or impair Plaintiff's ability to recover same;

E. An order directing the Defendants to turn over the proceeds of the settlement up to $166,614.53 to the Plan, plus accrued interest;

11

   F. Other and further equitable relief to which the Plaintiff may be entitled, including but not limited to specific performance, which may be necessary for the Defendants to comply with their obligations under the terms of the Plan;

   G. Awarding Plaintiff, Park Slope Food Coop as Plan Administrator of the Park Slope Food Coop Health Care Plan, pre- and post-judgment interest, costs and attorneys' fees; and

   H. Such other and further relief as this Court may deem just and proper.

December 20, 2019.

        KLG Luz & Greenberg, LLP


        By: _____/S/_____
          Thomas J. Luz (TL-4665)

        Ryan L. Woody
        MATTHIESEN, WICKERT & LEHRER, S.C.
        Wisconsin Bar No. 1047279
        *Pro Hac Vice to be filed.

        *Attorneys for Defendants*